**UNITED STATES DISTRICT COURT**[1]
**SOUTHERN DISTRICT OF NEW YORK**

**RICHARD JOHNSON,** on behalf of himself and all others similarly situated,

Plaintiff,

v.

**UUSTAR CORPORATION d/b/a DAILY VITA, LLC**

Defendant,

**Case No. ____________**

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, RICHARD JOHNSON ("Plaintiff" or "Mr. Johnson"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by and through undersigned counsel, Robert Schonfeld, Esq, of JOSEPH & NORINSBERG, LLC, brings this action against Defendant, UUSTAR CORPORATION d/b/a DAILY VITA, LLC ("Daily Vita" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, arising from Defendant's failure to ensure that its ecommerce Website, www.dailyvita.com is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff Richard Johnson is a visually impaired and legally blind individual who requires screen-reading software to access and independently navigate website content. See Exhibit A, Richard Johnson, Low Vision Evaluation Report (dated September 10, 2024). Plaintiff uses the terms "blind" and "visually impaired" because his central visual acuity with correction is less than or equal to 20/200. Mr. Johnson suffers from proliferative diabetic retinopathy ("PDR"),

[1] **Ex. A — Medical Report, attached hereto**

a severe stage of diabetic eye disease that has substantially impaired his vision, and he has been formally certified as legally blind by the New York State Commission for the Blind. Exhibit A

2. Defendant, UUSTAR CORPORATION d/b/a DAILY VITA, LLC ("Defendant" or "Daily Vita") operates a consumer-facing retail business through its interactive e-commerce website, www.dailyvita.com (the "Website" or "Defendant's Website"). Through the Website, Defendant offers consumers an extensive assortment of vitamins, nutritional supplements, health and wellness products, and related merchandise and provides product information and online purchasing functionality through which consumers can research, select, and purchase Defendant's products.

3. For blind consumers such as Plaintiff, independent access to an e-commerce website depends upon the Website being coded and maintained so that information presented visually can also be identified, interpreted, and communicated through screen-reading software. Screen readers convert properly coded digital information into synthesized speech, thereby permitting blind users to navigate webpages, identify products and controls, obtain product information, make selections, and interact with online purchasing functions. When website content and functionality are not properly coded for assistive technology, however, information readily available to sighted consumers may be unavailable, inadequately communicated, or functionally unusable to a blind consumer.

4. Plaintiff visited Defendant's Website on July 15, 2026, July 19, 2026, and September 1, 2026, for the purpose of browsing Defendant's health and wellness products and purchasing products in which he had a genuine interest, including NOW Foods Monk Fruit Liquid Organic 8 fl oz, Solgar Formula VM-75 120 Vegetable Capsules, and NuHealth Central Silver Multivitamin for Adults 50+ 300 Tablets. Plaintiff has ongoing health and wellness concerns and

was particularly interested in Defendant's selection of nutritional and wellness products and in independently reviewing the foregoing products, their descriptions and other available information to determine their suitability for his needs.

5. During each of his visits, Plaintiff attempted to navigate and use Defendant's Website with his screen-reading software to locate and obtain information concerning these products and other merchandise and to access the Website's shopping functionality. Plaintiff encountered numerous accessibility barriers that interfered with his ability to independently navigate, understand, and interact with the Website. Rather than being able to browse and shop with the independence afforded to sighted consumers, Plaintiff repeatedly encountered inaccessible website elements while attempting to obtain product information and use the Website's functionality. After experiencing these barriers and becoming frustrated by his inability to independently use the Website effectively, Plaintiff was unable to complete his intended shopping activity and left the Website without purchasing the products he sought.

6. Plaintiff remains genuinely interested in Defendant's products, including the specific products identified above, and intends to return to www.dailyvita.com to browse and purchase products once the accessibility barriers that prevented him from independently using the Website are removed. The barriers therefore have not eliminated Plaintiff's desire to patronize Defendant. Rather, they have deterred him from returning and attempting to complete his purchases while those accessibility barriers remain.

7. Plaintiff brings this civil action against Defendant for its failure to design, construct, maintain, and operate its Website so that the goods, services, privileges, advantages, and accommodations offered through the Website are fully and equally accessible to and independently usable by blind and visually impaired consumers. By maintaining accessibility barriers that

interfere with Plaintiff's ability to independently obtain product information, navigate the Website, and access its online shopping functionality, Defendant has denied Plaintiff full and equal access to the goods and services it offers to the public in violation of the Americans with Disabilities Act ("ADA").

8. Millions of Americans live with visual disabilities, including individuals who are blind and depend upon assistive technology to independently obtain information and participate in everyday commercial activities. As commerce increasingly includes digital channels, inaccessible website content can prevent blind consumers from independently researching products, comparing available merchandise, obtaining information necessary to make purchasing decisions, and completing transactions that sighted consumers can perform without comparable barriers.

9. Congress established a clear national mandate for the elimination of discrimination against individuals with disabilities and for their full and equal participation in American society. The discrimination experienced by persons with disabilities includes barriers that interfere with independent access to the goods and services of places of public accommodation. New York State and New York City law likewise protect persons with disabilities from discrimination in access to goods, services, privileges, and accommodations offered to the public.

10. Defendant's Website is not equally accessible to Plaintiff and other blind and visually impaired consumers. Plaintiff therefore seeks prospective injunctive relief requiring Defendant to remedy the accessibility barriers on www.dailyvita.com and to adopt and maintain practices sufficient to provide Plaintiff and other blind consumers with full and equal, independent access to the goods and services made available through the Website.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et seq*.

12. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related claims arising under the New York State Human Rights Law, N.Y. Executive Law §§ 290 et seq. ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-101 et seq. ("NYCHRL"); and the New York Civil Rights Law §§ 40-c and 40-d ("NYCRL"), because those claims arise from the same nucleus of operative facts as Plaintiff's federal ADA claim

13. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District. Plaintiff resides in Bronx County, New York, which lies within the Southern District of New York, and Plaintiff accessed and attempted to use Defendant's Website from his residence in Bronx County on July 15, 2026, July 19, 2026, and September 1, 2026. During those visits, Plaintiff encountered the accessibility barriers alleged herein while attempting to independently browse Defendant's products, obtain product information, and utilize the Website's online shopping functionality. Bronx County is within the Southern District of New York. Section 1391(b)(2) expressly permits venue where "a substantial part of the events or omissions giving rise to the claim occurred."

14. Defendant UUSTAR CORPORATION d/b/a DAILY VITA, LLC ("Defendant" or "DailyVita") operates and conducts commercial activity through the interactive e-commerce website www.dailyvita.com, through which consumers may research, select, and purchase

Defendant's products. Defendant offers its goods and services to consumers through the Website, including consumers located in New York.

15. This Court may exercise personal jurisdiction over Defendant because Plaintiff's claims arise from Defendant's commercial activity directed into New York and Defendant's provision of an interactive e-commerce Website through which New York consumers may access Defendant's goods and services and engage in retail transactions. Plaintiff's claims relate directly to his attempts, from New York, to access and utilize that commercial Website and the goods and services Defendant makes available through it.

16. In particular, Plaintiff accessed Defendant's Website from his home in Bronx County on three separate occasions for the purpose of browsing and purchasing Defendant's health and wellness products, including NOW Foods Monk Fruit Liquid Organic 8 fl oz, Solgar Formula VM-75 120 Vegetable Capsules, and NuHealth Central Silver Multivitamin for Adults 50+ 300 Tablets. The injuries alleged herein occurred when Plaintiff encountered accessibility barriers while attempting to use Defendant's Website in Bronx County and was thereby prevented from independently obtaining the same information, functionality, goods, and services made available to sighted consumers.

17. Defendant's alleged acts and omissions therefore caused injury to Plaintiff within the Southern District of New York. The accessibility barriers encountered by Plaintiff interfered with his attempts to independently access Defendant's online goods and services on multiple occasions and continue to deter Plaintiff from returning to the Website and completing his intended purchases while those barriers remain.

Plaintiff is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102. Because of his visual disability, Plaintiff uses screen-reading software, including NonVisual Desktop Access ("NVDA"), to access and interact with digital content. Defendant's Website must therefore be sufficiently accessible to permit Plaintiff to obtain the information and utilize the functionality necessary to access Defendant's goods and services without being denied the full and equal access afforded to sighted consumers.

## NATURE OF ACTION

18. The Internet has become an integral means through which consumers obtain information, research products, compare available goods, communicate with businesses, and conduct retail transactions. E-commerce websites provide consumers with the ability to investigate and purchase products independently and at the time and place of their choosing. For blind and visually impaired consumers, however, those benefits depend upon websites being designed and maintained in a manner compatible with the assistive technologies upon which they rely.

19. Blind and visually impaired individuals commonly access digital content through screen-reading software, which interprets information that can be programmatically determined from a website and communicates that information to the user through synthesized speech or other accessible output. Plaintiff uses NonVisual Desktop Access ("NVDA"), a screen-reading program, to navigate websites, obtain information, identify links and controls, review product information, and interact with online shopping functionality.

20. A screen reader does not perceive a webpage in the same visual manner as a sighted consumer. Rather, its ability to communicate the content and functionality of a website depends substantially upon the information made programmatically available through the manner in which

the website has been coded. Thus, information or functionality that is readily apparent visually may nevertheless be unavailable, ambiguous, or unusable to a blind consumer when the underlying website programming does not adequately identify the content, structure, purpose, name, role, or state of an element.

21. These distinctions have practical consequences in an e-commerce setting. A sighted consumer may visually identify a product image, read descriptive text, recognize the purpose of a button or link, move among product options, complete a form, add merchandise to a shopping cart, and proceed through the purchasing process. When those same elements are not appropriately communicated to screen-reading software, a blind consumer may be unable to determine what a product or control is, what information is being requested, what action a particular control will perform, or how to navigate efficiently through the Website. Inaccessible digital design can therefore interfere directly with a blind consumer's ability to independently research and purchase goods.

22. The World Wide Web Consortium ("W3C") has developed and published the Web Content Accessibility Guidelines ("WCAG"), which identify technical criteria for making web content more accessible to persons with disabilities. WCAG 2.1 addresses, among other matters, text alternatives for non-text content, information and relationships conveyed through website structure, keyboard accessibility, meaningful focus order, descriptive headings and labels, instructions for user-input fields, and the programmatic identification of the name, role, and value of user-interface components.

23. These accessibility principles are particularly important to blind consumers using screen-reading technology. For example, W3C explains that providing electronic text alternatives for non-text content permits that information to be rendered in forms including speech or Braille.

Similarly, properly identified website structure, controls, labels, relationships, and functionality allow assistive technologies to convey information necessary for a user to understand and interact with digital content. WCAG 2.1 includes specific criteria addressing these subjects.

24. Inaccessible website conditions may therefore create barriers that include, among others:

a. images or other meaningful non-text content that lack adequate text alternatives;

b. interactive controls whose names, roles, purposes, or states cannot be adequately determined through assistive technology;

c. form fields that lack programmatically associated labels or instructions;

d. headings, tables, lists, or other structural relationships that are not properly communicated to screen-reading software;

e. links whose purpose cannot adequately be determined from the link text or surrounding programmatic context;

f. keyboard-navigation and focus-order problems that interfere with a blind user's ability to move logically through interactive content;

g. changes in content, status, or context that are not communicated to assistive technology; and

h. other coding and structural deficiencies that prevent a blind consumer from obtaining substantially equivalent information or independently operating website functionality.

25. Such barriers are not merely technical irregularities when they occur on a retail website. Where an inaccessible element affects product identification, product information, navigation, selection controls, forms, shopping-cart functions, or other components of the

purchasing process, it may prevent a blind consumer from independently accomplishing tasks that the website makes readily available to sighted consumers.

26. The United States Department of Justice has recognized that inaccessible web content can deny persons with disabilities equal access to information and that the manner in which websites are designed and configured can create barriers that make them difficult or impossible for persons with disabilities to use. The Department further recognizes that blind individuals may use screen readers that speak text appearing on a screen and that businesses open to the public have obligations under the ADA concerning accessibility of the goods and services they provide through website.

27. Website accessibility is not necessarily a static condition. Commercial websites may change as content, products, features, third-party components, and underlying code are added or modified. Accordingly, meaningful accessibility requires consideration not merely of isolated defects at a particular moment, but of whether the Website is designed and maintained so that blind consumers can continue to access and independently use the Website's information and functionality as it changes.

28. This action concerns accessibility barriers encountered by Plaintiff while attempting to use Defendant's Website with NVDA to research and obtain goods offered by Defendant. As alleged more specifically below, those barriers interfered with Plaintiff's ability to independently locate and obtain information concerning products he genuinely wished to purchase and to utilize the Website's shopping functionality. Plaintiff seeks removal of those barriers so that he may return to the Website and independently access Defendant's goods and services in a manner comparable to sighted consumers.

**STANDING**

29. Plaintiff Richard Johnson is blind, visually impaired, and an individual with a disability within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12102. Plaintiff suffers from proliferative diabetic retinopathy ("PDR"), has been determined to be legally blind, and has been formally certified as legally blind by the New York State Commission for the Blind. See Exhibit A, Richard Johnson Low Vision Evaluation Report, dated September 10, 2024.

30. Because of his visual disability, Plaintiff cannot independently access and navigate digital content presented exclusively or inadequately through visual means. To access websites, obtain information, and interact with online functionality, Plaintiff uses NonVisual Desktop Access ("NVDA"), a screen-reading program that interprets information made programmatically available by a website and communicates that information through synthesized speech.

31. Plaintiff is an experienced Internet and screen-reader user. When a website is coded and maintained accessibly, Plaintiff can use NVDA and keyboard commands to navigate among headings, links, buttons, form fields, product descriptions, and other interactive elements. This permits Plaintiff to research products, compare available merchandise, make purchasing decisions, and access online shopping functionality without requiring a sighted person to interpret the Website or complete those tasks for him.

32. Defendant operates the commercial website www.dailyvita.com, through which consumers may research, select, and purchase vitamins, nutritional supplements, health foods, skincare items, and other health and wellness products. Defendant also represents that it operates a physical retail store in Apex, North Carolina, that sells vitamins, supplements, essential oils, health foods, skincare products, ginseng, and related merchandise. Defendant states that it began operating that retail store in February 2019 after having offered health and nutritional supplements through DailyVita.com for many years.

33. Defendant's Website and physical retail store are complementary channels through which Defendant presents and offers the same general categories of health, nutrition, and wellness products to consumers. The Website provides remote access to Defendant's merchandise, product information, shopping functions, and retail services and thereby facilitates consumer access to the goods and services of Defendant's retail business.

34. Plaintiff has genuine and continuing health and wellness concerns that cause him to seek information about vitamins, nutritional supplements, and related products. Plaintiff experiences depression, soreness and continuing pain extending through his legs and feet, and concerns regarding circulation in his lower extremities. Because of those concerns, Plaintiff wished to review Defendant's available nutritional and wellness products and their descriptions, ingredients, directions, and other information to determine whether particular products were appropriate for his personal needs.

35. Plaintiff did not visit Defendant's Website merely to test it or search for potential ADA violations. Plaintiff visited because Defendant sells the types of vitamins, nutritional supplements, and wellness products in which he has a genuine interest and because the Website is a direct means of reviewing and purchasing those products without requiring Plaintiff to travel to a physical store or depend upon another person to shop for him.

36. Specifically, Plaintiff was interested in investigating and purchasing the following products offered through Defendant's Website:

a. NOW Foods Monk Fruit Liquid Organic 8 fl oz;

b. Solgar Formula VM-75 120 Vegetable Capsules; and

c. NuHealth Central Silver Multivitamin for Adults 50+ 300 Tablets.

37. Plaintiff selected these products because they fall within the categories of nutritional and wellness products in which he has an ongoing personal interest. Plaintiff wanted to independently review each product's description, ingredients, quantity, directions, price, available purchasing options, and other information presented through Defendant's Website before deciding whether to purchase it. Plaintiff also wished to browse comparable products sold by Defendant so that he could make an informed purchasing decision.

38. Plaintiff attempted to access and use Defendant's Website from his home in Bronx County, New York, on July 15, 2026, July 19, 2026, and September 1, 2026. During each visit, Plaintiff used NVDA and keyboard commands and attempted to independently browse Defendant's product offerings, obtain information about the products identified above and other available merchandise, and use the Website's shopping functionality.

39. On July 15, 2026, Plaintiff visited Defendant's Website and attempted to browse Defendant's vitamins, nutritional supplements, and health and wellness products. Plaintiff attempted to locate and review the product page for NOW Foods Monk Fruit Liquid Organic 8 fl oz and to obtain the information necessary to evaluate and purchase that product. While navigating with NVDA, Plaintiff encountered website elements that were either inadequately identified, announced without sufficient descriptive information, or not communicated in a manner that allowed him to understand their purpose and use them independently.

40. These barriers interfered with Plaintiff's ability to move reliably through the product page, understand all information and controls presented visually, and determine how to proceed through the Website's shopping functions. Plaintiff could not use the Website with the efficiency, accuracy, and independence afforded to a sighted consumer seeking the same product.

A subsequent WAVE report concerning this exact product page documented 16 detected accessibility errors. See Exhibit B

41. On July 19, 2026, Plaintiff returned to Defendant's Website because he remained interested in Defendant's products and hoped that he would be able to navigate the Website successfully on a subsequent attempt. During that visit, Plaintiff attempted to locate, review, and purchase Solgar Formula VM-75 120 Vegetable Capsules.

42. Plaintiff again encountered accessibility barriers that interfered with his ability to independently understand and operate elements of the product page and related shopping functionality through NVDA. The Website did not consistently provide Plaintiff with the programmatic information necessary to identify and understand all controls, structural elements, and interactive features involved in researching and attempting to purchase the product. Plaintiff consequently could not independently obtain and evaluate all of the product and purchasing information made visually available to sighted consumers. A subsequent WAVE report examining the precise product page Plaintiff attempted to use documented 12 detected accessibility errors. See Exhibit B.

43. On September 1, 2026, Plaintiff made a third effort to access and use Defendant's Website. During that visit, Plaintiff attempted to investigate and purchase NuHealth Central Silver Multivitamin for Adults 50+ 300 Tablets and to browse other vitamins and wellness products that Defendant made available for online purchase.

44. Despite his persistence, Plaintiff again encountered Website content and functionality that NVDA did not communicate in a sufficiently meaningful or usable manner. Those conditions interfered with Plaintiff's ability to navigate the product page, understand all of its content and controls, evaluate the product, and proceed independently with his intended

shopping activity. A subsequent WAVE report concerning this exact product page documented 12 detected accessibility errors. See Exhibit B,, WAVE - 12 ERRORS - NuHealth Central Silver Multivitamin for Adults 50+ 300 Tablets - DailyVita.

45. During Plaintiff's three visits, the inaccessible conditions did not concern merely peripheral or decorative aspects of Defendant's Website. The barriers affected Plaintiff's efforts to locate products, understand product-page content and controls, move logically through the Website, evaluate the products in which he was interested, and use functionality associated with the online shopping process.

46. Plaintiff made repeated attempts to overcome the barriers by navigating through the Website with NVDA and keyboard commands. Each attempt required additional time and effort because Plaintiff could not consistently determine the identity, purpose, or function of Website elements that were readily apparent visually to sighted consumers. After encountering numerous barriers during each visit and becoming frustrated by his inability to use the Website independently and effectively, Plaintiff abandoned his shopping efforts without completing his intended purchases.

47. Plaintiff's inability to complete his shopping activity was not caused by a lack of interest in Defendant's products, an inability to purchase them, or a change in his purchasing objective. Plaintiff left the Website because its inaccessible conditions prevented him from independently obtaining the information and using the functionality needed to make an informed purchasing decision and complete his intended transaction.

48. The barriers denied Plaintiff the autonomy available to sighted consumers. A sighted consumer could visually browse Defendant's catalog, identify the products, review the displayed information, understand the available controls, and proceed through the shopping

process. Plaintiff, by contrast, could not independently complete those same tasks because material information and functionality were not consistently communicated through the assistive technology he must use.

49. Requiring Plaintiff to obtain the assistance of a sighted person would not provide an equal or equivalent shopping experience. Plaintiff wishes to decide for himself which products to investigate and purchase, privately review available product information, compare products, and complete retail transactions without surrendering his independence or disclosing his purchasing decisions to another person.

50. The WAVE reports corroborate the presence of accessibility errors on each of the three specific product pages Plaintiff attempted to use. The reports do not replace Plaintiff's personal account of his experience, nor are they offered as proof that every automatically detected error independently violated the ADA. Rather, they provide objective technical support for Plaintiff's allegation that the product pages he personally attempted to use contained accessibility defects at the time relevant to his shopping efforts.

51. Plaintiff remains genuinely interested in NOW Foods Monk Fruit Liquid Organic 8 fl oz, Solgar Formula VM-75 120 Vegetable Capsules, and NuHealth Central Silver Multivitamin for Adults 50+ 300 Tablets. He also remains interested in browsing Defendant's other vitamins, nutritional supplements, and wellness products to determine whether additional products are appropriate for his needs.

52. Plaintiff intends to return to Defendant's Website after the barriers that prevented his independent access have been removed. Upon remediation, Plaintiff intends to revisit the three identified product pages, review the product and purchasing information he was previously unable

to access effectively, compare the products with other merchandise offered by Defendant, and purchase those products that meet his needs.

53. Plaintiff's intent to return is supported by his three prior visits to Defendant's Website, his identification of three specific products, his repeated attempts to obtain information and use the Website's shopping functionality, his continuing health and wellness concerns, and his stated desire to purchase suitable products from Defendant once he can independently access the Website.

54. Plaintiff remains deterred from returning while the barriers continue because his prior visits establish that another attempt under substantially unchanged conditions is likely to result in the same denial of independent access. His deterrence therefore arises from his actual experience with Defendant's Website, not from a generalized concern or a hypothetical future injury.

55. Plaintiff's injury is concrete and particularized. He personally encountered barriers on three identified dates while attempting to investigate and purchase three identified products. Those barriers interfered with his ability to access product information and shopping functionality, caused him to abandon his purchasing efforts, and continue to deter him from returning while the Website remains inaccessible.

56. It is reasonable to infer that the discriminatory conditions will continue because Defendant's Website remains an active commercial platform whose inaccessible elements have not been shown to have been fully and permanently remediated. Plaintiff therefore faces a real and immediate threat that he will encounter the same or similar barriers when he returns to complete his intended shopping activity.

57. Plaintiff has alleged substantially more than a generalized profession of interest or a conclusory statement that he someday intends to return. His allegations identify what he wanted to purchase, why he was interested in Defendant's merchandise, the dates of his visits, the particular product pages he attempted to use, how the Website interfered with his shopping activity, why he abandoned his attempted transactions, and what he intends to do after the Website is remediated.

58. Plaintiff accordingly has suffered a past injury under the ADA, reasonably expects the inaccessible conditions to continue absent judicial relief, and has a concrete and credible intention to return to Defendant's Website and purchase suitable products once he can independently access its content and functionality. These allegations establish an actual and imminent injury rather than the type of conclusory, boilerplate intention found insufficient in Calcano v. Swarovski North America Ltd., 36 F.4th 68 (2d Cir. 2022).

59. Defendant's Website also facilitates access to the goods and services of Defendant's physical retail business. Defendant publicly identifies an Apex, North Carolina retail store that sells the same general categories of vitamins, nutritional supplements, health foods, skincare products, and wellness merchandise offered through DailyVita.com. The Website and store therefore operate as related channels of Defendant's retail enterprise rather than unrelated businesses. [dailyvita.com],

60. Defendant's failure to provide accessible Website content and functionality denies Plaintiff full and equal access to Defendant's goods, services, privileges, advantages, and accommodations. Defendant has thereby excluded Plaintiff from independently participating in retail activities that it makes available to sighted consumers.

61. Unless Defendant is required to remedy the barriers, Plaintiff will continue to be unable to independently obtain information concerning Defendant's products and use the Website's shopping functionality. Plaintiff therefore seeks prospective injunctive relief requiring Defendant to provide him with full and equal access and to maintain its Website in an accessible condition.

62. Title III authorizes prospective relief for a person subjected to disability discrimination and recognizes that a person is not required to engage in a futile gesture when the person has actual notice that the covered entity does not intend to comply. Where appropriate, injunctive relief may include an auxiliary aid or service, modification of a policy, or provision of alternative methods. 42 U.S.C. § 12188(a)(1)-(2).

63. Plaintiff seeks an injunction requiring Defendant to remove the accessibility barriers that denied him full and equal access and to adopt practices reasonably calculated to maintain the accessibility of Defendant's Website. Plaintiff does not seek to dictate a particular proprietary technology or to require Defendant to retain a consultant selected by Plaintiff. Plaintiff seeks effective relief that permits him to independently access Defendant's product information and online shopping functionality and prevents the recurrence of substantially similar barriers.

## <u>CLASS ACTION ALLEGATIONS</u>

64. Plaintiff, RICHARD JOHNSON, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website, www.dailyvita.comand as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

65. Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York City Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in

the City of New York and State of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered during the relevant statutory period.

66. Common questions of law and fact exist amongst the Class, including:

a. Whether Defendant's Website is a "public accommodation" under the ADA;

b. Whether Defendant's Website is a "place or provider of public accommodation" under the NYCHRL;

c. Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, and/or accommodations to people with visual disabilities, violating the ADA; and

d. Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYCHRL, NYCRL, and the NYSHRL.

67. Plaintiff's claims are typical of the Class. The Class, similar to the Plaintiff, are severely visually impaired or otherwise blind, and claims that Defendant has violated the ADA, NYSHRL, NYCRL, and/or the NYCHRL by failing to update or remove access barriers on the Website so that the website can be independently accessible to the Class.

68. Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel who is competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief concerning Plaintiff and the Class as a whole.

69. Alternatively, Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

70. Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

71. Moreover, judicial economy will be served by maintaining this lawsuit as a class action for numerosity purposes in that it is likely that the number of patrons who have attempted to utilize the services of Defendant's online platform exceeds 50 or more sight-impaired individuals.

## **FIRST CAUSE OF ACTION**
## **(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

72. Plaintiff Richard Johnson repeats and realleges each preceding allegation as though fully set forth herein.

73. Plaintiff is blind and visually impaired and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102. Plaintiff's visual impairment substantially limits the major life activity of seeing.

74. Defendant owns, leases, leases to, and/or operates a place of public accommodation within the meaning of Title III of the ADA. Defendant operates a retail business that offers vitamins, nutritional supplements, health foods, skincare products, and other health and wellness merchandise to members of the public through its physical retail establishment and its interactive e-commerce Website, www.dailyvita.com.

Title III provides that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

75. Defendant's Website is an online retail platform through which Defendant offers product information, shopping functionality, and access to the goods and services of Defendant's retail business. The Website is itself a place of public accommodation under the authority recognizing commercial websites as covered by Title III and, independently, constitutes a service, privilege, advantage, and accommodation of Defendant's physical retail establishment.

76. Title III prohibits denying an individual or class of individuals, on the basis of disability, the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i). Title III also prohibits affording an individual with a disability an opportunity to participate in or benefit from goods, services, privileges, advantages, or accommodations that is unequal to the opportunity afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii). [law.cornell.edu]

Title III further defines discrimination to include:

a. the failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the covered entity demonstrates that the requested modifications would fundamentally alter their nature; and

b. the failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently because of the

absence of auxiliary aids and services, unless the covered entity demonstrates that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

73. Defendant violated Title III of the ADA by designing, operating, and maintaining its Website in a manner that denied Plaintiff full and equal access to Defendant's products, product information, shopping functionality, and related retail goods, services, privileges, advantages, and accommodations.

74. Defendant's inaccessible Website conditions denied Plaintiff an opportunity equal to that afforded to sighted consumers to independently locate products, obtain and evaluate product information, understand and operate interactive controls, and utilize the Website's shopping functionality.

75. Defendant further discriminated against Plaintiff by failing to make reasonable modifications to its Website-related policies, practices, and procedures necessary to afford Plaintiff full and equal access and by failing to take the steps necessary to furnish auxiliary aids and services sufficient to provide effective access to Defendant's online retail content and functionality.

76. The discriminatory conditions personally affected Plaintiff during his visits to Defendant's Website on July 15, 2026, July 19, 2026, and September 1, 2026, while Plaintiff attempted to investigate and purchase the specific products identified above. Those conditions caused Plaintiff concrete injury, prevented him from completing his intended shopping activity, and continue to deter him from returning while the barriers remain.

77. Defendant's violations are ongoing because the accessibility barriers alleged herein have not been fully and permanently removed, and Plaintiff faces a real and immediate threat of encountering the same or substantially similar barriers when he returns to Defendant's Website.

78. Pursuant to 42 U.S.C. § 12188 and the remedies incorporated therein, Plaintiff is entitled to prospective injunctive relief requiring Defendant to remove the accessibility barriers that denied Plaintiff full and equal access and to take measures reasonably calculated to ensure that Defendant's Website remains independently accessible to Plaintiff. Section 12188 authorizes private enforcement and, where appropriate, relief requiring auxiliary aids or services, policy modifications, or alternative methods.

79. Plaintiff therefore requests the declaratory and injunctive relief, attorneys' fees, litigation expenses, costs, and other relief set forth in the Prayer for Relief.

## SECOND CAUSE OF ACTION

**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

77. Plaintiff, RICHARD JOHNSON, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

78. N.Y.C. Administrative Code § 8-107(4)(a) prohibits disability discrimination by the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent, or employee of a place or provider of public accommodation and prohibits the refusal, withholding, or denial, directly or indirectly, of the full and equal enjoyment, on equal terms and conditions, of the accommodations, advantages, services, facilities, or privileges of such place or provider of public accommodation because of a person's disability.

79. Plaintiff is legally blind and visually impaired and is a person with a disability protected by the NYCHRL. Defendant UUSTAR CORPORATION d/b/a DAILY VITA, LLC owns and/or operates its retail business and the interactive e-commerce Website, www.dailyvita.com, through which Defendant offers goods, product information, shopping functionality, and related retail services to members of the public.

80. Defendant is a place and/or provider of public accommodation within the meaning of the NYCHRL. Defendant offers retail goods and services to the public through its business operations, including its Website, and the Website provides consumers with access to Defendant's merchandise, product information, and purchasing functionality.

81. As alleged above, Plaintiff attempted to use Defendant's Website from his home in Bronx County, New York, on July 15, 2026, July 19, 2026, and September 1, 2026, while using NVDA. Plaintiff sought to research and purchase Defendant's health and wellness products, including NOW Foods Monk Fruit Liquid Organic 8 fl oz, Solgar Formula VM-75 120 Vegetable Capsules, and NuHealth Central Silver Multivitamin for Adults 50+ 300 Tablets.

82. During those visits, Defendant's inaccessible Website conditions interfered with Plaintiff's ability to independently obtain product information, understand and operate Website controls, navigate through product pages and other Website content, and utilize Defendant's online shopping functionality. Defendant thereby afforded Plaintiff an unequal opportunity to access and enjoy the accommodations, advantages, services, facilities, and privileges of Defendant's retail business because of Plaintiff's disability.

83. The NYCHRL further requires covered entities to make reasonable accommodations for persons with disabilities where necessary to permit them to enjoy the right or rights in question. N.Y.C. Administrative Code § 8-107(15).

84. Defendant has failed to provide Plaintiff reasonable accommodation sufficient to permit him to independently access and use the Website's product information and retail functionality on terms equal to those afforded to sighted consumers. Defendant's failure to provide accessible digital content and functionality therefore constitutes discrimination on the basis of disability in violation of N.Y.C. Administrative Code §§ 8-107(4)(a) and 8-107(15).

85. As a direct result of Defendant's discriminatory conduct, Plaintiff was unable to independently complete his intended shopping activities, abandoned his purchasing efforts on three occasions, and remains deterred from returning to Defendant's Website. While the accessibility barriers alleged herein remain, Plaintiff nevertheless remains genuinely interested in Defendant's products and intends to return to Defendant's Website following remediation to review the products identified above, compare those products with Defendant's other merchandise, and purchase products suitable for his needs. Unless Defendant remedies the discriminatory conditions, Plaintiff faces continuing denial of the full and equal enjoyment of Defendant's goods and services.

86. Defendant's conduct has caused and continues to cause Plaintiff injury under the NYCHRL. Plaintiff therefore seeks injunctive relief requiring Defendant to remove the accessibility barriers alleged herein and to provide Plaintiff full and equal access to Defendant's Website and the goods and services offered through it.

87. N.Y.C. Administrative Code § 8-502 authorizes a person claiming to be aggrieved by an unlawful discriminatory practice to bring a civil action. Plaintiff accordingly seeks all relief available to him under the NYCHRL, including injunctive relief, compensatory damages, punitive damages to the extent established by the evidence and permitted by law, reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION

**(New York State Human Rights Law)**
**("NYSHRL")**

88. Plaintiff Richard Johnson repeats and realleges each preceding allegation as though fully set forth herein.

89. At all times relevant to this action, Defendant's conduct was subject to the New York State Human Rights Law, N.Y. Executive Law §§ 290 et seq. ("NYSHRL"). The NYSHRL protects against discrimination in places of public accommodation on the basis of disability.

90. Plaintiff is legally blind and visually impaired and is a person with a disability within the meaning of N.Y. Executive Law § 292(21).

91. Defendant UUSTAR CORPORATION d/b/a DAILY VITA, LLC owns and/or operates a retail business and the interactive e-commerce Website www.dailyvita.com, through which Defendant offers members of the public access to vitamins, nutritional supplements, health and wellness merchandise, product information, and online purchasing functionality.

92. N.Y. Executive Law § 296(2)(a) prohibits the owner, lessee, proprietor, manager, superintendent, agent, or employee of a place of public accommodation from directly or indirectly refusing, withholding, or denying, because of disability, the accommodations, advantages, facilities, or privileges thereof.

93. Plaintiff attempted to access and use Defendant's Website from his home in Bronx County, New York, on July 15, 2026, July 19, 2026, and September 1, 2026, while using NVDA. During those visits, Plaintiff sought to investigate and purchase Defendant's products, including NOW Foods Monk Fruit Liquid Organic 8 fl oz, Solgar Formula VM-75 120 Vegetable Capsules, and NuHealth Central Silver Multivitamin for Adults 50+ 300 Tablets.

94. As alleged above, accessibility barriers on Defendant's Website interfered with Plaintiff's ability to independently locate and review products, understand product information and Website controls, navigate the relevant product pages, and utilize Defendant's online shopping functionality. Those conditions denied Plaintiff access to accommodations, advantages, facilities, and privileges of Defendant's retail business on terms equal to those enjoyed by sighted consumers.

95. The NYSHRL further recognizes disability discrimination to include the refusal to make reasonable modifications in policies, practices, or procedures when necessary to afford facilities, privileges, advantages, or accommodations to persons with disabilities, subject to the statutory defenses, and the refusal to take necessary steps concerning auxiliary aids and services where required by the statute. N.Y. Executive Law § 296(2)(c).

96. Defendant has failed to provide Plaintiff effective and independently usable access to the Website's product information and shopping functionality and has failed to remedy the accessibility barriers personally encountered by Plaintiff. As a result, Plaintiff was unable to complete his intended shopping activities and abandoned his purchasing efforts on each of his three visits.

97. Plaintiff remains genuinely interested in Defendant's merchandise and intends to return to Defendant's Website following remediation to investigate the products identified above, compare Defendant's available products, and purchase products suitable for his needs. Plaintiff remains deterred from returning while the accessibility barriers continue.

98. Defendant's conduct has therefore denied Plaintiff, because of his disability, full and equal access to the accommodations, advantages, facilities, and privileges offered through Defendant's retail business, in violation of N.Y. Executive Law § 296(2).

99. The violations alleged herein have caused and continue to cause injury to Plaintiff. Unless Defendant remedies the inaccessible conditions, Plaintiff faces the continued denial of equal and independent access upon his intended return.

100. Pursuant to N.Y. Executive Law § 297(9), Plaintiff seeks all relief available in this civil action, including compensatory damages, injunctive relief, reasonable attorneys' fees where authorized, costs and disbursements, and such other relief as the Court deems just and proper. Section 297 establishes the enforcement framework for persons claiming to be aggrieved by unlawful discriminatory practices.

## FOURTH CAUSE OF ACTION

**(Violation of New York State Civil Rights)**
**("NYCRL")**

101. Plaintiff Richard Johnson repeats and realleges each preceding allegation as though fully set forth herein.

102. Plaintiff is legally blind and visually impaired and is a person with a disability as that term is defined by N.Y. Executive Law § 292(21) and incorporated into N.Y. Civil Rights Law § 40-c.

103. N.Y. Civil Rights Law § 40-c provides that no person shall, because of disability as defined in Executive Law § 292, be subjected to discrimination in the exercise of his or her civil rights by any person, firm, corporation, or institution.

104. Defendant UUSTAR CORPORATION d/b/a DAILY VITA, LLC is a corporation and/or business entity that offers retail goods and services to members of the public through its retail operation and interactive e-commerce Website, www.dailyvita.com.

105. As alleged herein, Plaintiff attempted to access Defendant's Website from Bronx County, New York, on July 15, 2026, July 19, 2026, and September 1, 2026, for the genuine purpose of investigating and purchasing Defendant's health and wellness products.

106. Because of accessibility barriers encountered while using NVDA, Plaintiff was unable to independently access and utilize Website information and functionality that Defendant made available to sighted consumers. Those barriers interfered with Plaintiff's ability to investigate the three specific products identified above and to proceed independently with his intended shopping activities.

107. Defendant's failure to provide Plaintiff equal access to its retail goods and services because of Plaintiff's disability constitutes discrimination in Plaintiff's civil rights within the meaning of N.Y. Civil Rights Law § 40-c.

108. Plaintiff remains interested in Defendant's products and intends to return following remediation. The continued existence of the accessibility barriers therefore subjects Plaintiff to continuing discrimination and deters him from exercising the same ability to independently investigate and purchase Defendant's merchandise afforded to sighted consumers.

109. N.Y. Civil Rights Law § 40-d provides a private statutory remedy for violations of § 40-c and permits an aggrieved person to recover a statutory penalty of not less than $100 nor more than $500 for each violation. Section 40-d further requires that notice of an action under that provision be served upon the New York State Attorney General at or before commencement of the action.

110. At or before commencement of this action, Plaintiff has served or will serve the notice required by N.Y. Civil Rights Law § 40-d upon the New York State Attorney General.

111. Plaintiff accordingly seeks the relief available under N.Y. Civil Rights Law §§ 40-c and 40-d, together with such other relief as may be authorized by law.

**FIFTH CAUSE OF ACTION**

**(Declaratory Relief)**

112. Plaintiff Richard Johnson repeats and realleges each preceding allegation as though fully set forth herein.

113. An actual and substantial controversy exists between Plaintiff and Defendant concerning Plaintiff's right to independently access and enjoy Defendant's goods, services, privileges, advantages, and accommodations without discrimination on the basis of his disability and Defendant's corresponding obligations under Title III of the ADA, the NYSHRL, the NYCHRL, and the NYCRL.

114. Plaintiff contends that Defendant's Website contains accessibility barriers that have denied him full and equal access to Defendant's product information and shopping functionality and that Defendant's maintenance and operation of those inaccessible conditions violates the federal, state, and local disability-discrimination laws alleged herein.

115. Plaintiff personally encountered those accessibility barriers while attempting to access and use Defendant's Website on July 15, 2026, July 19, 2026, and September 1, 2026, and remains deterred from returning while the barriers continue. Plaintiff nevertheless intends to return following remediation to investigate and purchase Defendant's products.

116. The controversy between Plaintiff and Defendant is therefore concrete, immediate, and continuing rather than hypothetical or abstract. Plaintiff seeks a determination of the parties' respective rights and obligations concerning equal and independent access to Defendant's Website and the goods and services provided through Defendant's retail business.

117. The Declaratory Judgment Act provides that, in a case of actual controversy within its jurisdiction, a federal court may declare the rights and other legal relations of an interested party seeking such a declaration, whether or not further relief is or could also be sought. 28 U.S.C. § 2201(a).

118. A judicial declaration is appropriate to resolve the existing controversy concerning Defendant's obligations and Plaintiff's rights under the statutes alleged herein and to clarify the legal relationship of the parties in connection with Plaintiff's intended future use of Defendant's Website.

119. Plaintiff therefore requests a declaration that Defendant's discriminatory conduct, as established by the evidence, violates the applicable provisions of the ADA, NYSHRL, NYCHRL, and NYCRL, together with such further relief as is appropriate under 28 U.S.C. § 2202.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42

U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: October 27, 2026
New York, New York

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
*/s/ Robert L. Schonfeld*
Robert Schonfeld, Esq.
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com